IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| HOUSE OF THALLER, INC., and ACUITY, A MUTUAL INSURANCE COMPANY, a/s/o HOUSE OF THALLER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HANOVER FOODS CORPORATION, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 3:20-cv-243 <br> JURY DEMANDED |

## COMPLAINT

The Plaintiffs, House of Thaller, Inc., ("House of Thaller") and Acuity, A Mutual Insurance Company, as subrogee of House of Thaller ("Acuity"), for their Complaint, would state as follows:

### I. THE PARTIES

1. House of Thaller is a for profit corporation organized under the laws of the State of Tennessee, with its principal place of business located at 1600 Harris Road, Knoxville, Tennessee 37924. House of Thaller is a citizen and resident of the State of Tennessee for purposes of 28 U.S.C. § 1332.

2. Acuity is an insurance company incorporated under the laws of the State of Wisconsin and licensed in the State of Tennessee to transact insurance business. Acuity is a citizen and resident of the State of Wisconsin for purposes of 28 U.S.C. § 1332.

3. Hanover Foods Corporation ("Hanover") is a for profit corporation organized under the laws of the State of Pennsylvania, with its principal place of business located

at 1486 York Street, P.O. Box 334, Hanover, Pennsylvania 17331. Hanover is a citizen and resident of the State of Wisconsin for purposes of 28 U.S.C. § 1332.

## II. VENUE AND JURISDICTION

4. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 3.

5. Jurisdiction is proper within this Court pursuant to 28 U.S.C. § 1332 as the parties to this action are citizens and residents of different states and the amount in controversy, as stated more fully below, exceeds $75,000, exclusive of interest and cost. Therefore, jurisdiction with the U.S. District Court for the Eastern District of Tennessee is proper.

6. As a substantial part of the events or omissions giving rise to this suit occurred within the Eastern District of Tennessee, and within this Division, venue is proper in this Court and in this Division pursuant to 28 U.S.C. § 1391.

## III. FACTUAL BACKGROUND

7. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 6.

8. House of Thaller packages and distributes food products for purchase by the public at various grocery stores and supermarkets across the United States of America.

9. At all times relevant to this action, Acuity insured House of Thaller providing Commercial Property Coverage, under insurance policy no. Z19787 ("the policy"). The policy provided business income and extra expense coverage for Premises 1, Location 1, which was 1600 Harris Road, Knoxville, Tennessee 37924. The business income and extra expense coverage had a policy coverage limit of $448,721.00.

10. The Food and Drug Administration ("FDA") requires current good manufacturing practices, hazard analysis, and risk-based preventative controls for human food. See 21 C.F.R. § 117 *et seq.* As part thereof, an appropriate supply-chain program requires use of approved suppliers as required by 21 C.F.R. § 117.420. Receiving facilities are bound to approving suppliers in accordance with the requirements of 21 C.F.R. § 117.410(d). In approving suppliers in accordance with the requirements of 21 C.F.R. § 117.410(d), House of Thaller had in place specific requirements before it would approve use of a certain supplier/vendor. Any supplier/vendor must be in strict compliance with these specific requirements in order to become an official vendor for House of Thaller. As part of these specific requirements, Listeria species must be negative/undetected to be accepted into House of Thaller's production facility. Upon information and belief, Hanover expressly agreed to this by executing and delivering to House of Thaller a Supplier Questionnaire.

11. In or about March 2017, House of Thaller received a shipment of black beans that were produced, sold, and delivered by Hanover. These black beans were intended to be used to manufacture and distribute food products for retail purchase. This load of black beans consisted of 18 totes of black beans. This load of black beans was designated with lot code 17052323.

12. Pursuant to House of Thaller protocol, before accepting lot 17052323 into its facility, micro testing was performed on a sampling of the black beans from lot 17052323. Lot 17052323 tested positive for Listeria Monocytogenes. House of Thaller requires all its ingredient suppliers to supply ingredients, such as black beans, to be free of any of species of Listeria, including Listeria Monocytogenes. House of Thaller is held

to the same standard—that all its products are to be free of any species of Listeria—by each of its customers. This is an industry standard for all ready to eat products.

13. With this discovery of Listeria Monocytogenes, a DNA strain typing test was ordered. It was determined that this DNA strain had not been previously detected in any prior testing performed by House of Thaller. The new DNA strain was labeled "Pattern 3 Listeria Monocytogenes". Hanover transported black beans contaminated with Pattern 3 Listeria Monocytogenes to House of Thaller's production facility. Because of such, House of Thaller rejected lot 17052323. Rejected lot 17052323 was authorized to be returned to Hanover by Hanover and was to be delivered to Hanover Foods Corporation, 1175 Wilson Avenue, Hanover, Pennsylvania 17331. House of Thaller still continued to use Hanover as a black bean supplier under the supposition that this was a onetime occurrence that was caused at receipt of lot 17052323 and did not have any further impact on House of Thaller's finished product or production facility.

14. On June 29, 2017, a routine, customer mandated environmental and finished product test was conducted. This testing returned a positive result for Pattern 3 Listeria Monocytogenes. Because the findings of positive Pattern 3 Listeria Monocytogenes included House of Thaller's finished product and production facility, House of Thaller entered into a period of full test and hold until the source of contamination could be determined and eradicated.

15. During the period of extensive testing, House of Thaller tested several finished products, pieces of equipment, and areas of its production facility. In total, House of Thaller found 22 samples, both from finished product and its production facility, that returned positive Pattern 3 Listeria Monocytogenes results—the same Pattern 3 Listeria

Monocytogenes found in the Hanover black beans that were ultimately rejected and returned to Hanover in March 2017. The Pattern 3 Listeria Monocytogenes caused damage to House of Thaller's property, which resulted in House of Thaller's business being interrupted. The damaged property was discovered between June 29, 2017 and July 15, 2017. The following chart demonstrates the test results from samples taken between June 29, 2017 and July 15, 2017:

| **LAB ID NUMBER** | **PRODUCT DESCRIPTION** | **SAMPLE DATE** |
|---|---|---|
| 0630134 | HoT-th1-06292017-260-prod-1706300-Filler Hopper | June 29, 2017 |
| 063061 | HoT-P-06292017-1706301 (Day 1) WB Beginning | June 29, 2017 |
| 063067 | GoT-P-06292014-1706341 CU Beginning | June 29, 2017 |
| 0707397 | HoT-TH1-07062017-Prod-235-1707015-Hummus Hopper | July 6, 2017 |
| 0707432 | HoT-P-07062017-1707002-Beginning (Carrot) | July 6, 2017 |
| 0707444 | HoT-P-070522017-1707010 Beginning (Edamame) | July 5, 2017 |
| 0706520 | HoT-P-07022017-1706346 Sample 1 (Cilantro Lemon) | July 2, 2017 |
| 0706512 | HoT-P-07052017-1706348, Beginning (Roasted Red Pepper) | July 5, 2017 |
| 0706517 | HoT-P-07062017-1707016, End (Roasted Garlic White Bean) | July 6, 2017 |
| 0706515 | HoT-P-07062017-1707016, Beginning (Roasted Garlic White Bean) | July 6, 2017 |
| 0707435 | HoT-P-07062017-1707015, Beginning Spicy White Bean | July 6, 2017 |
| 0707443 | HoT-P-07052017-1707010, Beginning Edamame | July 5, 2017 |
| BL46537 | HoT-TH1-07152017-210-Test Batch-Motor Seal | July 15, 2017 |

| BL46541 | HoT-TH1-0715201-210-Test Batch-Hopper Gap (During Drop) | July 15, 2017 |
| --- | --- | --- |
| BL46543 | HoT-TH1-07152017-210-Test Batch-Lower Slide Rear | July 15, 2017 |
| BL46544 | HoT-TH1-07152017-210-Test Batch-VMag Drop Door (Closed) | July 15, 2017 |
| BL46545 | HoT-TH1-07152017-210-Test Batch-Door Slide Liquid | July 15, 2017 |
| BL46548 | HoT-TH1-07152017-210-Test Batch-Hopper Gap (1st Stop) | July 15, 2017 |
| BL46523 | HoT-TH-0715201-210-Test Batch-Prod. Sample 1 | July 15, 2017 |
| BL46524 | HoT-TH-0715201-210-Test Batch-Prod. Sample 2 | July 15, 2017 |
| BL46525 | HoT-TH-0715201-210-Test Batch-Prod. Sample 3 | July 15, 2017 |
| BL45859 | HoT-P-07142017-1707092 Yellow Lentil Hummus-Beginning, Middle, End | July 14, 2017 |

Certified Laboratories, Inc., performed this testing and produced these test results. All the above-stated positive test results traced back to the same Pattern 3 Listeria Monocytogenes found in the rejected black beans produced by Hanover.

16. The presence of Pattern 3 Listeria Monocytogenes in House of Thaller's finished product, in House of Thaller's production facility, and on House of Thaller's equipment, resulted in in property damage occurring and was discovered between June 29, 2017 and July 15, 2017. Immediately after discovering the vast presence of Pattern 3 Listeria Monocytogenes in its finished product, production facility, and equipment, House of Thaller discontinued use of Hanover Beans. However, because of the vast presence of Pattern 3 Listeria Monocytogenes, House of Thaller was forced to destroy hundreds of thousands of

dollars worth of finished product as that finished product had been associated with the positive Pattern 3 Listeria Monocytogenes.

17. In or about July 2017, House of Thaller's production facility had to be shut down and deep cleaned in an attempt to eliminate the source of the continued Pattern 3 Listeria Monocytogenes findings. This resulted in hundreds of production hours lost and great expense to deep clean the production facility to eradicate Pattern 3 Listeria Monocytogenes that Hanover introduced to House of Thaller's production facility.

18. After a complete shutdown of House of Thaller's production facility, extensive environmental testing was conducted. This testing showed that any trace of Pattern 3 Listeria Monocytogenes had been eliminated from House of Thaller's finished product, production facility, and processing equipment. However, Pattern 3 Listeria Monocytogenes was later reintroduced into House of Thaller's production facility after House of Thaller continued use of Hanover produced black beans.

19. During the period of increased testing and continued Pattern 3 Listeria Monocytogenes findings, customer orders were dramatically shorted due to the disposal of contaminated finished product. Due to Hanover's introduction of Pattern 3 Listeria Monocytogenes into House of Thaller's production facility, thousands of pounds of finished product had to be disposed of, which resulted in customer orders being put at risk. As a result thereof, House of Thaller's customers threatened to discontinue use of House of Thaller as a supplier if shortages and delays continued to persist. In an attempt to satisfy understandably upset customers, House of Thaller expedited orders to its customers until those customers were able to be made whole in terms of on time and in full deliveries. These expedited freight charges were a costly expense borne by House of Thaller due to Hanover's

AU House of Thaller Bus Inc Compl 200529

7

Case 3:20-cv-00243   Document 1   Filed 06/05/20   Page 7 of 17   PageID #: 7

introduction of Pattern 3 Listeria Monocytogenes into House of Thaller's finished product, production facility, and processing equipment.

20. House of Thaller submitted a claim to its insurance company, Acuity—claim no. PY8030. Under the policy, Acuity paid House of Thaller what it was contractually obligated to pay. Acuity paid House of Thaller a total of $468,721.00 under claim no. PY8030. This includes $448,721.00, for which Acuity paid House of Thaller under the Business Income and Extra Expenses coverages; $15,000.00, for which Acuity paid House of Thaller for laboratory testing; and $5,000, for which Acuity paid House of Thaller for the costs to prepare inventory. In total, Acuity's subrogation interest is **$468,721.00**.

21. However, House of Thaller suffered losses in the millions. An estimate of total damages suffered by both House of Thaller and Acuity as a result of Hanover's introduction of Pattern 3 Listeria Monocytogenes into House of Thaller's production facility:

| | |
|---|---|
| Expedited Freight | $280,155.09 |
| Retailer chargebacks | $80,094.00 |
| Hanover Finished Product Disposals | $ 376,754.07 |
| Costs Associated with Hanover Product Disposals | $ 17,470.83 |
| Hanover Lab Testing | $ 97,835.21 |
| Trailer Rental Fees | $ 3,975.27 |
| Diesel Purchased for Refer Storage Trailer | $ 3,542.04 |
| Interest on LOC Bank Loans | $ 70,581.76 |
| Consultation - Tracking of Freight Deductions | $ 15,168.00 |
| Special Cleaning by QSI During Plant Shutdown | $ 3,774.00 |
| Cost of Excess Labor Hours | $ 895,717.30 |
| Excess Labor Price | $ 55,738.26 |
| Lost Contribution Margin and Labor Coverage | $ 1,573,889.37 |
| **TOTAL** | **$ 3,474,695.20** |

The $3,474,695.20 in damages were caused by Hanover's introduction of Pattern 3 Listeria Monocytogenes into House of Thaller's finished product, production facility, and processing equipment. Of the $3,474,695.20 in damages sustained by House of Thaller, Acuity paid $468,721.00. House of Thaller's uninsured losses as a result of Hanover's introduction of Pattern 3 Listeria Monocytogenes into House of Thaller's finished product, production facility, and processing equipment amounts to **$3,005,974.20**.

## IV. COUNT I – NEGLIGENCE

22. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 21.

23. Hanover, as a producer of raw materials and ingredients that ultimately end up in finished consumer foods, had a duty to deliver black beans to House of Thaller free of all Listeria, including Pattern 3 Listeria Monocytogenes. Hanover owed a duty of care as House of Thaller would not have approved and used Hanover as a producer and supplier of raw materials and ingredients if House of Thaller had known Hanover would introduce any Listeria, including Pattern 3 Listeria Monocytogenes, through Hanover's raw materials and ingredients into House of Thaller's finished product, production facility, and equipment.

24. Hanover breached its duty owed to House of Thaller when it negligently introduced Listeria, including Pattern 3 Listeria Monocytogenes, through Hanover's raw materials and ingredients into House of Thaller's finished product, production facility, and equipment.

25. Listeria, including Pattern 3 Listeria Monocytogenes, would not have been present but for the negligence of Hanover.

26. Hanover's negligence of introducing Listeria, including Pattern 3 Listeria Monocytogenes, into House of Thaller's finished product, production facility, and equipment was the cause in fact and proximate or legal cause of the damages as set forth herein.

27. Hanover's negligence of introducing Listeria, including Pattern 3 Listeria Monocytogenes, into House of Thaller's finished product, production facility, and equipment caused damages to both Plaintiffs.

## V. COUNT II – NEGLIGENCE *PER SE*

28. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 27.

29. Hanover shipped black beans that were contaminated with Pattern 3 Listeria Monocytogenes to House of Thaller. By doing so, Hanover violated the FDA's code of federal regulations 21 C.F.R. § 117 *et seq.*

30. Hanover was negligent *per se* in shipping black beans contaminated with Pattern 3 Listeria Monocytogenes to House of Thaller. This violation of 21 C.F.R. § 117 *et seq.* constitutes negligence *per se*.

31. Listeria, including Pattern 3 Listeria Monocytogenes, would not have been present but for the negligence *per se* of Hanover.

32. Hanover's negligence *per se* of shipping black beans contaminated with Pattern 3 Listeria Monocytogenes to House of Thaller was the cause in fact and proximate or legal cause of the damages as set forth herein. This act resulted in House of Thaller's finished product, production facility, and processing equipment being contaminated with Pattern 3 Listeria Monocytogenes, which caused Plaintiffs to sustain damages in the amount of $3,474,695.20.

## VI. COUNT III – BREACH OF CONTRACT

33. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 32.

34. Hanover had express knowledge of House of Thaller's expressly written supplier/vendor approval requirements. Hanover executed and returned to House of Thaller a "Vender Information Request" document, which expressly advised Hanover of the specifications House of Thaller requires of its vendors. Hanover executed and returned to House of Thaller a "Supplier Questionnaire" advising it had knowledge and understood that House of Thaller will not accept any Listeria species, including Pattern 3 Listeria Monocytogenes, into its production facility. Through these documents that Hanover executed and returned to House of Thaller, as well as the numerous purchase orders, House of Thaller and Hanover had a valid and enforceable contract.

35. As part of this valid and enforceable contract, Hanover agreed in exchange for payment from House of Thaller, to deliver black beans free of all Listeria, including Pattern 3 Listeria Monocytogenes.

36. House of Thaller paid Hanover for black beans free of Listeria, including Pattern 3 Listeria Monocytogenes. Hanover did not deliver black beans that were free of all Listeria, including Pattern 3 Listeria Monocytogenes.

37. Pattern 3 Listeria Monocytogenes contaminated House of Thaller's finished product, production facility, and processing equipment. Hanover breached its contractual duties owed to House of Thaller.

38. As a direct and proximate result of Hanover's failures to meet its contractual obligations to House of Thaller, House of Thaller's finished product, production facility, and

processing equipment were contaminated with Pattern 3 Listeria Monocytogenes, and Plaintiffs sustained damages in the amount of $3,474,695.20.

## VII. COUNT IV – BREACH OF IMPLIED CONTRACTUAL DUTY

39. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 38.

40. House of Thaller and Hanover had a valid and enforceable contract.

41. Hanover had an implied contractual duty to deliver black beans to House of Thaller free of all Listeria, including Pattern 3 Listeria Monocytogenes.

42. Failure to deliver black beans to House of Thaller free of all Listeria, including Pattern 3 Listeria Monocytogenes, constitutes a breach of contract.

43. Hanover did not deliver black beans to House of Thaller free of all Listeria, including Pattern 3 Listeria Monocytogenes. Instead, Hanover delivered black beans to House of Thaller contaminated with Pattern 3 Listeria Monocytogenes. The Pattern 3 Listeria Monocytogenes contaminated black beans caused property damage as it contaminated House of Thaller's finished product, production facility, and processing equipment. Hanover should have delivered black beans to House of Thaller free of all Listeria, including Pattern 3 Listeria Monocytogenes; but Hanover did not.

44. Hanover did not perform its contractual obligations when it delivered black beans to House of Thaller contaminated with Pattern 3 Listeria Monocytogenes that ultimately caused property damage when it damaged House of Thaller's finished product, production facility, and processing equipment and therefore breached its implied contractual duties to House of Thaller.

45. As a direct and proximate result of Hanover's breaches of its implied

contractual duties to House of Thaller, House of Thaller's finished product, production facility, and processing equipment were contaminated with Pattern 3 Listeria Monocytogenes, and Plaintiffs sustained damages in the amount of $3,474,695.20.

## VIII. COUNT V – BREACH OF IMPLIED WARRANTY

46. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 45.

47. The black beans contaminated with Pattern 3 Listeria Monocytogenes distributed and sold by Hanover were not merchantable for its intended use; furthermore, Hanover knew or should have known the black beans contaminated with Pattern 3 Listeria Monocytogenes were not merchantable and were unfit for its intended use. Hanover breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose of the black beans contaminated with Pattern 3 Listeria Monocytogenes.

48. Hanover is a seller and supplier of black beans, and House of Thaller was Hanover's customer with respect to these black beans. As a seller of these black beans, Hanover breach its implied warranty of merchantability as defined under Tenn. Code Ann. § 47-2-314, implied warranty of fitness for a particular purpose as defined under Tenn. Code Ann. § 47-2-315, and/or any express warrantied as defined under Tenn. Code Ann. § 47-2-313.

49. As a direct result of Hanover's breach of implied warrant of merchantability, breach of implied warranty for a particular purpose, an/or breach of express warranty, House of Thaller's finished product, production facility, and processing equipment were contaminated with Pattern 3 Listeria Monocytogenes, and Plaintiffs sustained damages in the amount of $3,474,695.20.

## IX. COUNTY VI – STRICT PRODUCTS LIABILITY

50. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 49.

51. Hanover was the seller of a defective product (black beans contaminated with Pattern 3 Listeria Monocytogenes). In or around June and July 2017, the black beans contaminated with Pattern 3 Listeria Monocytogenes contaminated House of Thaller's finished product, production facility, and processing equipment. In or around June and July 2017, the black beans contaminated with Pattern 3 Listeria Monocytogenes were unsafe for normal anticipated use as defined under Tenn. Code Ann. § 29-28-101 *et seq.*

52. Pursuant to Tenn. Code Ann. § 29-28-101 *et seq.*, "[a] … seller of a product shall … be liable for any injury to … property caused by the product … [if] … the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the … seller."

53. Hanover is a seller of products as defined by Tenn. Code Ann. § 29-28-102 as it is in the business of selling a product, whether for resale, for use, or for consumption.

54. Hanover failed to ensure the black beans contaminated with Pattern 3 Listeria Monocytogenes were free of all Listeria, including Pattern 3 Listeria Monocytogenes. The black beans contaminated with Pattern 3 Listeria Monocytogenes were defective as the black beans contaminated with Pattern 3 Listeria Monocytogenes were unsafe for normal consumption.

55. Hanover exercised substantial control over the black beans contaminated with Pattern 3 Listeria Monocytogenes when the beans were packaged for ultimate delivery to, and receipt by, House of Thaller.

56. In or around June 2017 and July 2017, Hanover and its employees, agents, and representatives were strictly liable to Plaintiffs for producing, selling, and/or distributing an unreasonably dangerous and defective product pursuant to Tenn. Code Ann. § 28-28-105(a), which proximately caused property damage to House of Thaller's finished product, production facility, and processing equipment.

57. Hanover, its employees, agents, and representatives were negligent in this manner because they failed to produce, manufacture, construct, design, assemble, distribute, and sell a product that was safe and suitable for its intended and anticipated use.

58. As a direct result of Hanover's failure to ensure the black beans contaminated with Pattern 3 Listeria Monocytogenes were free of all Listeria, including Pattern 3 Listeria Monocytogenes, House of Thaller's finished product, production facility, and processing equipment were contaminated with Pattern 3 Listeria Monocytogenes, and Plaintiffs sustained damages in the amount of $3,474,695.20.

## X. DAMAGES

59. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 58.

60. House of Thaller sustained damages in an amount of **$3,005,974.20**.

61. Acuity sustained damages in an amount of **$468,721.00**.

62. Together, Plaintiffs sustained damages in an amount of **$3,474,695.20**.

## XI. DEMAND FOR A JURY TRIAL

63. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 62.

64. Plaintiffs demand a jury of 12 to try this matter.

**WHEREFORE**, Plaintiffs, House of Thaller, Inc. and Acuity, A Mutual Insurance Company, pray as follows:

1. That the Defendant, Hanover Foods Corporation, be required to appear and answer herein;

2. That Plaintiffs be awarded its damages as described herein along with pre-judgment and post-judgment interest;

3. That the costs of this action, including discretionary costs, be assessed against the Defendant, Hanover Foods Corporation; and

4. For such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

_s/Cory R. Miller_
**CORY R. MILLER**
Registration No. 34770
DIRECT: (615) 630-7745
(615) 256-8787, Ext. 145
cmiller@bkblaw.com

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228
*Attorney for Plaintiff, Acuity, A Mutual Insurance Company as subrogee of House of Thaller, Inc.*

and

_s/Charles G. Taylor_
**CHARLES G. TAYLOR, III**
Registration No. 1761
(865) 966-4343
chuck@mltlaw.com

**MCDONALD, LEVY & TAYLOR**
10805 Kingston Pke, Suite 200
Knoxville, TN 37934
*Attorney for Plaintiff, House of Thaller, Inc.*